No. _____

IN THE

# United States Court of Appeals
# for the Federal Circuit

---

IN RE GOOGLE LLC,

Petitioner,

---

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Nos. 2:18-cv-00462, -00463 (consolidated)
Judge Rodney Gilstrap

---

## PETITION FOR A WRIT OF MANDAMUS

---

Thomas P. Schmidt
HOGAN LOVELLS US LLP
390 Madison Ave.
New York, NY 10017
Tel.: (212) 918-5547
Fax: (212) 918-3100



September 17, 2019

Neal Kumar Katyal
Keith O'Doherty
HOGAN LOVELLS US LLP
555 Thirteenth St., N.W.
Washington, D.C. 20004
Tel.: (202) 637-5528
Fax: (202) 637-5190
neal.katyal@hoganlovells.com

*Counsel for Petitioner*
*Google LLC*

# CERTIFICATE OF INTEREST

Counsel for Petitioner Google LLC hereby certifies as follows:

1.  The full name of every party represented by me is: **Google LLC.**

2.  The real parties in interest are: **Google LLC.**

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the parties I represent are as follows:

**Google LLC** is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company.  No publicly held company owns 10% or more of Alphabet Inc.'s stock.

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or that are expected to appear in this court are:

**Hogan Lovells US LLP:** Neal Kumar Katyal, Thomas P. Schmidt, and Keith O'Doherty.

**O'Melveny & Myers LLP:** Darin W. Snyder, Luann L. Simmons, David S. Almeling, Mark Liang, Boris Mindzak, and Eric Su.

**Mann Tindel Thompson:** J. Mark Mann and G. Blake Thompson.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: **None.**

Dated: September 17, 2019                  /s/ Neal Kumar Katyal
                                                          Neal Kumar Katyal

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF AUTHORITES ................................................................... iii

RELIEF SOUGHT ...........................................................................1

QUESTIONS PRESENTED...................................................................1

STATEMENT OF JURISDICTION............................................................1

INTRODUCTION ...........................................................................1

FACTS RELEVANT TO THE ISSUES PRESENTED...........................................5

REASONS THE WRIT SHOULD ISSUE.........................................................10

I.    THE RIGHT TO THE WRIT IS CLEAR AND
      INDISPUTABLE ..................................................................10

      A.    Google Does Not Have A Regular And Established
            Place Of Business In the Eastern District Of Texas .....................10

            1.    *Google Does Not Have A "Place Of Business"
                  In The Eastern District Of Tex*as .........................................11

            2.    *Any Place Of Business In The District Is Not
                  Regular And Established* ....................................................19

            3.    *Any Place Of Business In The Eastern District
                  Is Not Google's* .................................................................20

II.    THE OTHER MANDAMUS FACTORS ARE SATISFIED..................23

CONCLUSION ........................................................................32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Automated Packaging Sys., Inc.* v. *Free-Flow Packaging Int'l, Inc.*,
No. 5:14-cv-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018)......................15

*Bd. of Regents of the Univ. of Texas Sys.* v. *Bos. Sci. Corp.*,
No. 2018-1700, 2019 WL 4196997 (Fed. Cir. 2019) ........................................24

*BMC Software, Inc.* v. *Cherwell Software, LLC*,
No. 1:17-cv-01074-LO-TCB (E.D. Va. Dec. 21, 2017) ....................................29

*CDx Diagnostic, Inc.* v. *U.S. Endoscopy Grp., Inc.*,
No. 13-CV-5669(NSR), 2018 WL 2388534
(S.D.N.Y. May 24, 2018)..................................................................12, 13, 29, 30

*Cheney* v. *U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004)..............................................................................10, 23, 25

*CUPP Cybersecurity LLC.* v. *Symantec Corp.*,
No. 3:18-cv-01554-M, 2019 WL 1070869 (N.D. Tex 2019).....................*passim*

*Delta T, LLC* v. *Dan's Fan City, Inc.*,
No. 8:18-cv-03858-PWG, 2019 WL 3220287 (D. Md. July 17,
2019) ...............................................................................................................19

*Dep't of Revenue of Ore.* v. *ACF Indus., Inc.*,
510 U.S. 332 (1994).........................................................................................13

*HomeBingo Network, Inc.* v. *Chayevsky*,
428 F. Supp. 2d 1232 (S.D. Ala. 2006) ............................................................16

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018) .........................................................5, 25, 27, 32

*In re BP Lubricants USA Inc.*,
637 F.3d 1307 (Fed. Cir. 2011) .................................................................25, 26

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ...................................................................*passim*

## TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ..........................................................25

*In re Google LLC*,
   No. 2018-152, 2018 WL 5536478 (Fed. Cir. 2018) ...................................*passim*

*In re Google LLC*,
   914 F.3d 1377 (Fed. Cir. 2019) ..................................................3, 8, 18

*In re HTC Corp.*,
   889 F.3d 1349 (Fed. Cir. 2018) ..........................................................24

*In re Micron Tech., Inc.*,
   875 F.3d 1091 (Fed. Cir. 2017) ........................................4, 10, 25, 27

*In re Queen's Univ. at Kingston*,
   820 F.3d 1287 (Fed. Cir. 2016) ..........................................................25

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ...............................................................24

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ........................................5, 10, 25, 29

*LaBuy* v. *Howes Leather Co.*,
   352 U.S. 249 (1957) ............................................................................25

*Lane* v. *Principi*,
   339 F.3d 1331 (Fed. Cir. 2003) ..........................................................30

*Mackey* v. *Lanier Collection Agency & Serv., Inc.*,
   486 U.S. 825 (1988) ............................................................................19

*Peerless Network, Inc.* v. *Blitz Telecom Consulting, LLC*,
   No. 17-CV-1725 (JPO), 2018 WL 1478047
   (S.D.N.Y. Mar. 26, 2018) ...............................................................*passim*

*Personal Audio, LLC* v. *Google, Inc.*,
   280 F. Supp. 3d 922 (E.D. Tex. 2017) ...............................9, 15, 17, 29

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Raytheon Co.* v. *Cray, Inc.*,
258 F. Supp. 3d 781 (E.D. Tex. 2017)....................2

*Rensselaer Polytechnic Inst.* v. *Amazon, Inc.*,
No. 1:18-cv-00549 (BKS/CFH), 2019 WL 3755446 (N.D.N.Y. 2019) ....................*passim*

*Schlagenhauf* v. *Holder*,
379 U.S. 104 (1964)....................10, 25, 31

*Schnell* v. *Peter Eckrich & Sons, Inc.*,
365 U.S. 260 (1961)....................23

*SEVEN Networks, LLC* v. *Google LLC*,
315 F. Supp. 3d 933 (E.D. Tex. 2018)....................*passim*

*TC Heartland LLC* v. *Kraft Foods Group Brands LLC*,
137 S. Ct. 1514 (2017)....................*passim*

*United States* v. *Denson*,
603 F.2d 1143 (5th Cir. 1979) ....................5

**STATUTES:**

28 U.S.C. § 1400(b) ....................*passim*

28 U.S.C. § 1406....................25

28 U.S.C. § 1406(a) ....................1, 9

28 U.S.C. § 1694....................12, 13

All Writs Act, 28 U.S.C. § 1651 ....................1

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(c),
125 Stat. 329, 331 (2011)....................18

29 Stat. 695-696 (1897) ....................12

# TABLE OF AUTHORITIES—Continued

**Page(s)**

LEGISLATIVE MATERIAL:

29 Cong. Rec. 1900 (1897) (statement of Rep. Lacey) .....................................13, 14

RULE:

Fed. R. Civ. P. 12(b)(3).................................................................................................9

OTHER AUTHORITIES:

Black's Law Dictionary (1st ed. 1891) ......................................................................19

Oxford English Dictionary (online ed. 2019) ....................................................11, 12

William Dwight Whitney, The Century Dictionary 732
    (Benjamin E. Smith, ed. 1911) ......................................................................2, 11

## RELIEF SOUGHT

Petitioner Google LLC respectfully seeks a writ of mandamus directing the District Court for the Eastern District of Texas to dismiss the case pursuant to 28 U.S.C. § 1406(a).

## QUESTION PRESENTED

Whether a defendant who keeps computer equipment in the facility of a third party in a judicial district has a "regular and established place of business" in that district under the patent venue statute.  28 U.S.C. § 1400(b).

## STATEMENT OF JURISDICTION

This Court has jurisdiction to grant mandamus relief under the All Writs Act, 28 U.S.C. § 1651.

## INTRODUCTION

In *TC Heartland LLC* v. *Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), the Supreme Court corrected an overly broad reading of the patent venue statute that had severely distorted the geography of patent litigation in the United States.  More than a third of all patent litigation was concentrated in the Eastern District of Texas, and nearly a quarter of it proceeded before a single district court.

Only a month after the Supreme Court's decision, however, that same district court issued an opinion broadly construing a different part of the patent venue statute than was at issue in *TC Heartland.*  That other provision authorizes

venue where a defendant "has a regular and established place of business," 28 U.S.C. § 1400(b), and the court concluded that "a fixed physical location in the district is not a prerequisite to proper venue" under that provision. *Raytheon Co.* v. *Cray, Inc.*, 258 F. Supp. 3d 781, 797 (E.D. Tex. 2017). This Court swiftly granted a petition for mandamus, holding that "[t]his interpretation impermissibly expands the statute." *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017). "The statute requires a 'place,' *i.e.*, '[a] building or a part of a building set apart for any purpose' or 'quarters of any kind' from which business is conducted." *Id.* (quoting William Dwight Whitney, The Century Dictionary 732 (Benjamin E. Smith, ed. 1911)). It "cannot be read to refer merely to a virtual space." *Id.* Thus, this Court prevented the reintroduction of the pre-*TC Heartland* regime through a statutory backdoor.

After the decision in *Cray*, the same court yet again dramatically expanded the reach of Section 1400(b)—in direct conflict with another district court in its own district. It held that a computer owned by a defendant but kept in a facility belonging to someone else qualifies as a defendant's "regular and established place of business" in the district where that facility is located. *SEVEN Networks, LLC* v. *Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018). Google petitioned for mandamus, asking this Court once again to correct an overbroad interpretation of the venue statute. But the Court declined to intervene at that juncture, opting

instead "to allow the issue to percolate" further. *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. 2018) (per curiam). Judge Reyna noted in dissent, however, that "[t]he district court's current reading of § 1400(b) may be even more expansive than the district court's reading of the statute that [this Court] vacated in *Cray*." *Id*. at *5 (Reyna, J., dissenting). And then, in a dissent from denial of rehearing en banc (joined by Judges Newman and Lourie), Judge Reyna wrote: "The question is not if we will take this issue up, but when * * *." *In re Google LLC*, 914 F.3d 1377, 1382 (Fed. Cir. 2019) (Reyna, J., dissenting from denial of rehearing).

Now is the time to take this issue up. In the present case, the district court stuck to its increasingly aberrant interpretation of the venue statute, and this Court should grant mandamus to correct it. As a matter of both precedent and plain text, a "place of business" is (1) real property in which (2) some employee or other agent carries out the defendant's business. *Cray*, 871 F.3d at 1362. A computer stored in a third party's facility in a judicial district simply does not fit the bill. Moreover, in the year plus since Google filed its first mandamus petition, the issue has percolated apace. Two more district courts have weighed in, expressly and persuasively disagreeing with the interpretation of the venue statute adopted by the district court here. *See CUPP Cybersecurity LLC.* v. *Symantec Corp.*, No. 3:18-cv-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019); *Rensselaer*

*Polytechnic Inst.* v. *Amazon.com, Inc.*, No. 1:18-cv-00549 (BKS/CFH), 2019 WL 3755446 (N.D.N.Y. Aug. 7, 2019).  Moreover, both of those decisions occurred in the context of cases against other companies, proving that the legal issues presented by this petition are cross-cutting and not confined to Google or to any unique set of facts.

And the interpretation of the venue statute that the district court adhered to below is, once again, warping the distribution of patent cases.  Since the district court's initial decision in *SEVEN*, Petitioner Google alone has been sued dozens of times for patent infringement in the Eastern District of Texas, with the vast majority of those suits coming after this Court denied mandamus.  By contrast, in the entire year preceding the *SEVEN* decision, Google was not sued for patent infringement in that District once.  Leaving this issue to percolate longer would mean colossal waste—throwing out not only a trial in this case, but proceedings in all those other cases, and in cases against other defendants too.  *Cf. In re Google*, 914 F.3d at 1382 (Reyna, J., dissenting from denial of rehearing).  Indeed, given the high volume of patent litigation concentrated before the district court below, the error in question will have major systemic effects on patent litigation.

This Court has frequently granted mandamus petitions "to correct a district court's answers to 'basic, undecided' legal questions * * * in the venue context." *In re Micron Tech., Inc.*, 875 F.3d 1091, 1095 (Fed. Cir. 2017) (citation omitted);

*see In re BigCommerce, Inc.*, 890 F.3d 978 (Fed. Cir. 2018); *In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018); *Cray*, 871 F.3d 1355.  Indeed, "when the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course."  *United States* v. *Denson*, 603 F.2d 1143, 1145 (5th Cir. 1979) (en banc).  The Court should grant the writ here.

## FACTS RELEVANT TO THE ISSUES PRESENTED

1.  Petitioner Google LLC uses a tiered network to deliver content to its users quickly and reliably.  The core of the network is Google's data centers, which provide computation and backend storage.  Appx41. There are a handful of data centers in the United States, but none is in Texas.  Appx41, 45.  The next tier of Google's network infrastructure is known as "Edge Points of Presence" ("PoPs"), which connect Google's network to the rest of the internet.  Appx42. Google has no PoPs in the Eastern District of Texas.  *Id.*

The last tier of the network is the "Google Global Cache" ("GGC") servers or "edge nodes."  *Id.*  GGC servers are off-the-shelf computers hosted in the facilities of a local ISP, almost always at the request of the ISP.  *Id.*  "If an ISP chooses to host a GGC server, then a copy of certain digital content that is popular with the ISP's subscribers"—say, a popular YouTube video—"can be temporarily stored or 'cached' on that GGC server."  *Id.*  As a result, an ISP does not need to

fetch the content from outside its network and use up medium or longhaul capacity to do so. *Id*. GGC servers, though, are not necessary for the delivery of Google content. *See id*. Indeed, several months after the district court decided *SEVEN*— and after Google had subsequently been sued more than thirty times in the Eastern District—Google took its GGC servers in the District out of service, so they are no longer serving traffic or cached content.[1]

GGC servers are made by third-party computer manufacturers. *Id*. If an ISP requests to participate in the program, Google verifies that the ISP is eligible, and then the ISP and Google enter into a service agreement that defines each party's role. *See* Appx42-43. The computer manufacturer ships the machines directly to the ISP's facility, and the ISP decides where to locate the computer within its facility. Appx42. The ISP unpacks and installs the server in its own facility, after which digital content popular with the ISP's subscriber base loads onto the machine. *Id.*

---

[1] The district court found that "[v]enue is assessed as of the time of filing of the complaint," *SEVEN*, 315 F. Supp. 3d at 941 n.7, so Google's subsequent removal of the GGC servers from service in the Eastern District of Texas does not impact venue in this case. And it goes without saying that the removal of the GGC servers from service does not lessen the need for this Court's intervention. First, the rule this Court adopts would apply nationally, and therefore to the rest of Google's network. But more importantly, the legal principles undergirding the district court's decision will affect numerous other companies and other forms of company-owned equipment.

2.  Google does not own or lease any real property in the Eastern District of Texas.  Appx44-45.  Google has no employees who work at any office in the District.  *Id.*  Rather, respondent Super Interconnect Technologies LLC (SIT) relied below upon the fact that there are several third-party ISPs in the Eastern District of Texas that hosted GGC servers in their facilities.  Appx1-2.  But Google had never seen the servers; no Google employee ever visited the servers in the Eastern District; and Google does not even know precisely where the servers were installed.  Appx42-43.  Indeed, Google does not have rights to physically access the spaces in which the GGC servers are stored while the service agreements are in force.  *Id.*

3.  Respondent sued Google for patent infringement in the Eastern District of Texas.  Appx20.  The complaint alleges that Google's Pixel smartphones infringe claims of three patents.  Appx22-25, 27-30, 32-35.  In its complaint, SIT's sole basis for venue was Google's GGC servers in the Eastern District of Texas.  Appx21.

4.  The case was assigned to the same district court that, in a prior case, had found that Google's GGC servers constitute a "regular and established place of business" for venue purposes.  *SEVEN*, 315 F. Supp. 3d 933.  Google petitioned this Court for mandamus to review that prior decision, which a divided panel denied.  *In re Google*, 2018 WL 5536478.  The panel majority stated that the

district court's decision had "focused on many specific details of Google's arrangements," and that it was "not known if the district court's ruling involves * * * broad and fundamental legal questions." *Id*. at *2. The majority also maintained that it was "appropriate to allow the issue to percolate" further in district courts. *Id*. at *3.

Judge Reyna dissented. He wrote that "Google's petition presents fundamental issues concerning the application of § 1400(b) that have far reaching implications and on which district courts have disagreed." *Id*. at *4 (Reyna, J., dissenting). And he registered his skepticism of the District Court's ruling: "It seems to me that under *Cray*, Google's servers or the server racks on which the servers are kept may not constitute a 'regular and established place of business' for venue * * *." *Id*. at *5. Indeed, "[t]he district court's current reading of § 1400(b) may be even more expansive than the district court's reading of the statute that we vacated in *Cray*." *Id*.

Google filed a petition for rehearing en banc, which was denied. *In re Google*, 914 F.3d 1377. Judge Reyna dissented again, this time joined by Judges Newman and Lourie. They wrote that, "[f]or many companies, the reasoning of the district court's holding could essentially reestablish nationwide venue, in conflict with *TC Heartland*, by standing for the proposition that owning and controlling computer hardware involved in some aspect of company business (e.g.,

8

transmitting data) alone is sufficient." *Id*. at 1381 (Reyna, J., dissenting from denial of rehearing). And they concluded: "The question is not if we will take this issue up, but when, and how many judicial and party resources will have been needlessly wasted by the time we do." *Id*. at 1382.

5. The present case was filed four days after this Court denied Google's petition for mandamus in *SEVEN*, and it relied on the same flawed theory of venue that the Court declined to review. Appx21. Google moved to dismiss SIT's complaint under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue. Dkt. 13. The District Court denied the motion. It "s[aw] no reason to depart from its prior decision and finds that venue in this case is proper for the same reasons outlined in *SEVEN*." Appx2. It acknowledged that its holding was in direct conflict to two other district courts: *Personal Audio, LLC* v. *Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017), which was decided before *SEVEN*, and *CUPP*, which was decided after. But it "disagree[d] with the legal analysis in" those decisions. Appx2 n.2. The Court also "believe[d] it appropriate" to address, briefly, Judge Reyna's dissents in *SEVEN*. Appx2. In particular, the Court explained that, "[b]y its holding in *SEVEN*, [it] neither intends nor approves the view that venue is proper everywhere." Appx3.

This petition followed.

## <u>REASONS THE WRIT SHOULD ISSUE</u>

A writ of mandamus is appropriate when (1) the right to issuance of the writ is "clear and indisputable"; (2) the party seeking the writ has "no other adequate means to attain the relief he desires"; and (3) the writ is "appropriate under the circumstances." *Cheney* v. *U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-381 (2004) (internal quotation marks and citations omitted). As this Court has noted, "mandamus can be an appropriate means for the appellate court to correct a district court's answers to 'basic, undecided' legal questions," including "in the venue context." *Micron*, 875 F.3d at 1095 (quoting *Schlagenhauf* v. *Holder*, 379 U.S. 104, 110 (1964)). All the pertinent factors support mandamus here.

## I.     THE RIGHT TO THE WRIT IS CLEAR AND INDISPUTABLE.

### A.     Google Does Not Have A Regular And Established Place Of Business In the Eastern District Of Texas.

"[T]he Plaintiff bears the burden of establishing proper venue." *ZTE*, 890 F.3d at 1013. According to the district court, respondent satisfied its burden of showing that Google has a "regular and established place of business" in the Eastern District because several ISPs—none of them Google entities—host a handful of GGC servers there. That finding is flatly inconsistent with the text of the law, this Court's precedent, and a growing number of district court decisions. Mandamus is necessary to correct the district court's clear and recurring legal error, and to resolve the expanding confusion in district courts around the country.

10

*1. Google Does Not Have A "Place Of Business" In The Eastern District Of Texas.*

*a.* In order for venue to be proper in a patent infringement suit, the defendant must have a "regular and established place of business" in the relevant district. 28 U.S.C. § 1400(b). The phrase "place of business"—as a matter of precedent and as a matter of plain text—contains two different requirements. First, a place of business must be real property or must have the attributes of real property. As this Court has put it, "[t]he statute requires * * * '[a] building or a part of a building set apart for any purpose' or 'quarters of any kind' from which business is conducted." *Cray*, 871 F.3d at 1362 (quoting William Dwight Whitney, The Century Dictionary 732 (Benjamin E. Smith, ed. 1911)); *see also CUPP,* 2019 WL 1070869, at *3 (finding venue improper in part because "servers are not a building or a part of a building"). That gloss on the meaning of the phrase accords with common dictionary definitions. The Oxford English Dictionary, for instance, defines "place of business" as "a place where business is conducted, spec[ifically] a shop, office, or other commercial establishment." Oxford English Dictionary (online ed. 2019). In short, a "place of business" must be real estate—a "building" or "quarters" where business is carried out. *Cray*, 871 F.3d at 1362.

Second, a "place of business" must be a place where either employees or other agents of the company are present to carry out the business. This, again, follows from the plain meaning of the phrase. A structure is only a "place of

11

business" if business "is conducted" there. *Place of Business*, Oxford English Dictionary. And, as a general matter, business is conducted *by people*. One does not typically refer to a computer as "conducting a company's business," and it would be doubly anomalous to refer to a computer as both the "place" and the thing "conducting" business at the place.

The requirement of employees or agents is confirmed, beyond any doubt, by the patent service statute. The service statute and the venue statute were enacted side-by-side as a single provision on the same day. *See* 29 Stat. 695-696 (1897). Both are still on the books with non-substantive modifications (though they are now codified in separate sections). The service statute provides that "[i]n a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant *may be made upon his agent or agents conducting such business*." 28 U.S.C. § 1694 (emphasis added). "In other words, § 1694 presumes that a defendant with a 'place of business' in a district will also have 'agents conducting such business' in that district." *Peerless Network, Inc.* v. *Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *4 (S.D.N.Y. Mar. 26, 2018); *see also Rensselaer*, 2019 WL 3755446, at *11-12 (concluding that "Congress contemplated that a defendant would have agents in the district conducting the defendant's business" at the place of business); *CDx*

*Diagnostic, Inc.* v. *U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669(NSR), 2018 WL 2388534, at *3 (S.D.N.Y. May 24, 2018) (storage units were not a "place of business" under Section 1400(b) because "no 'employee or agent of [Defendant actually] conduct[s] business at' the storage units" (alterations in original and citation omitted)).

Section 1694 thus definitively clears up any ambiguity about Section 1400(b): When Congress used the phrase "place of business," it understood that term to mean a place with "agents" of the defendant "conducting * * * business." 28 U.S.C. § 1694; *see Dep't of Revenue of Or.* v. *ACF Indus., Inc.*, 510 U.S. 332, 342 (1994) ("identical words used in different parts of the same act are intended to have the same meaning" (internal quotation marks and citations omitted)).  The court in *SEVEN* was simply wrong to reject this reading as "extra-statutory." *SEVEN*, 315 F. Supp. 3d at 956.  The proper interpretation flows ineluctably from the text of the service statute.  *See Rensselaer*, 2019 WL 3755446, at *11; *Peerless*, 2018 WL 1478047, at *4.

Moreover, reading "place of business" in Section 1400(b) to require real property in which employees conduct business is consistent with the statute's purpose and legislative history.  As this Court has explained, the venue "statute's 'main purpose' was to 'give original jurisdiction to the court where a permanent agency transacting the business is located.'"  *Cray*, 871 F.3d at 1361 (quoting 29

13

Cong. Rec. 1900 (1897) (statement of Rep. Lacey)).  And the examples of

permanent business locations discussed in the legislative history shed light on what

Congress had in mind as a "place of business": a "manufactory," or an "office

where the goods are sold."  29 Cong. Rec. 1900 (1897) (statement of Rep. Lacey).

Those examples confirm the need for real property, and for employees conducting

the "business" from such locations.

 *b*. With these principles in mind, it is clear that Google does not have a

"place of business" in the Eastern District.  Google does not own, rent, or lease any

real property there.  Appx44-45.  And while several ISPs in the District hosted

GGC servers, even the district court did not rely on a finding that a "room or

building of the ISP" belongs to Google.  *See SEVEN*, 315 F. Supp. 3d at 965

("[T]he 'place' of the 'place of business' is not the room or building of the ISP but

rather Google's server and the space wherein it is located.").  Google does not

lease an ISP's building or any space in it.  Appx42.  In the relevant "Service

Agreements," the ISPs simply agree to provide "[r]ack space[,] * * * power,

network interfaces and IP addresses" to the GGCs, as well as "[r]emote support."

Appx43.  The contract therefore deals primarily with the provision of services by

the ISP, not real estate, and it gives Google no control over any physical space.

Indeed, the agreement expressly puts the *ISP* in control of "physical access" to the

equipment.  *Id*.  The only time at which it authorizes Google employees to even

enter the premises where the GGC machines are located is if the agreement is

terminated and the ISPs do not return the machines.  *See* Appx42-43.

The uncontroverted evidence is that no agent or employee of Google *ever*

visited the GGC servers located in the District, and Google employees certainly do

not work from the "rack spaces" (*i.e.*, shelves) where the GGC servers are

connected to the ISP's network.  And Google has no employees who work at any

Google office in the District.  Appx44-45.  In these circumstances, it is clear that

Google does not have a "place of business" in the District.

*c*. The district court concluded otherwise, finding that the GGC servers

qualify as "places," and therefore satisfy the statute.  Appx2-3; *SEVEN*, 315 F.

Supp. 3d at 950-954.  That finding contravenes the statutory text and basic English

usage.  The phrase "place of business," as this Court has explained, refers to a

"building" or "quarters."  *Cray*, 871 F.3d at 1362 (internal quotation marks

omitted).  It does not include a physical object simply because it occupies physical

space.  Indeed, such a definition would allow *any* "physical" object—such as a

smartphone or computer owned or sold by a defendant —to qualify as a "regular

and established place of business."  That outcome is at odds with the plain meaning

and intent of the venue statute.  *See Personal Audio*, 280 F. Supp. 3d at 934.[2]

---

[2] *See also Automated Packaging Sys., Inc.* v. *Free-Flow Packaging Int'l, Inc.*, No.
5:14-cv-2022, 2018 WL 400326, at *9 (N.D. Ohio Jan. 12, 2018) ("machines at the
customer's locations within th[e] district" supplied by the defendant for their

The district court in *SEVEN* also ruled that the "rack space" which holds a server could be a "place" under the statute. *SEVEN*, 315 F. Supp. 3d at 950-954, 965. But, as one court has put it, "whatever a 'place of business' is, it is not a shelf." *Peerless Network*, 2018 WL 1478047, at *4-5. The GGC servers are installed in a few shelves of a nondescript rack in a large room full of other rows of shelves. The servers are like a few books in a library:



**Interior Rack Spaces**



**Google GGC Servers**

*In re Google LLC*, 914 F.3d at 1378 (Reyna, J., dissenting from denial of rehearing). These particular shelves are not a "building," "quarters," "commercial

---

customers were not places of business of the defendant); *HomeBingo Network, Inc.* v. *Chayevsky*, 428 F. Supp. 2d 1232, 1250 (S.D. Ala. 2006) ("That an individual may be a part owner of a piece of equipment (in this case, a slot machine) located in a judicial district does not render the situs of that equipment his regular and established place of business for venue purposes.").

establishment," or any other accurate gloss on the meaning of a "regular and established place of business." *See supra* p. 6-7.

Once again, *any* physical object occupies some physical space, and to hold that any such space qualifies as a "place of business" would eviscerate the statutory limits on venue. Companies would potentially become subject to venue in any judicial district in the United States in which a physical object belonging to the company—a computer, cell phone tower, piece of railroad track, perhaps even a mailbox—were located. *See CUPP*, 2019 WL 1070869, at *3 ("to conclude that a company's business is being carried out by its servers[] 'would have far-reaching consequences that distort the scope of the statute'") (quoting *Personal Audio*, 280 F. Supp. 3d at 934). Indeed, under the district court's rule, *Cray* (which held that an employee's home office was not a defendant's place of business) might have come out differently if the employee happened to use a company-owned computer at home. *See In re Google LLC*, 2018 WL 5536478, at *5 (Reyna, J., dissenting). After all, that computer takes up some physical desk or shelf space.[3]

In the present case, the district court sought to downplay the implications of its expansive interpretation of the venue statute, stating that it "neither intends nor approves the view that venue is proper everywhere." Appx3. But the court failed

---

[3] The district court in *SEVEN* also likened the GGC servers to a warehouse, but the analogy boomerangs. *See* 315 F. Supp. 3d at 957-958. A warehouse has both of the necessary characteristics of a "place of business"—it is real property, and it is staffed by actual employees of the business. A computer has neither.

to explain how the legal principles it espoused could be cabined so as to avoid just that result for many companies. Indeed, the two key factors that the court pointed to show just how expansive its reading of the venue statute is. Specifically, it explained that its assertion of venue over Google "was grounded largely on the fact that (1) Google's business is delivering online content to users, and (2) the GGC servers are a part of Google's three-tiered network that conducts this very activity." *Id*. That would presumably be true also of a cable box to a cable company, or a cell tower to a cell phone provider. In short, "it takes little imagination to see how the district court's holding in this case could impact companies that, while conducting business, transmit data over a wide variety of equipment." *In re Google LLC*, 914 F.3d at 1380 (Reyna, J., dissenting from denial of rehearing).

    *d*. The district court in *SEVEN* also relied on Section 18(c) of the America Invents Act, which provides that an ATM machine "shall not be deemed to be a regular and established place of business" for certain venue purposes. Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(c), 125 Stat. 329, 331 (2011). According to the court, that provision implies that ATM machines otherwise *would* be places of business. *SEVEN*, 315 F. Supp. 3d at 962-963. But an equally "plausible construction of Congress' action in" 2011 is that it was merely "clarifying the original meaning of" the venue statute—and, as explained above, the "original meaning" of the statute is so clear that that is the only

18

"plausible construction." *Mackey* v. *Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 839 (1988). In any event, "the opinion of this later Congress as to the meaning of a law enacted [more than a century] earlier does not control the issue." *Id.*; *see also Rensselaer*, 2019 WL 3755446, at *12 (noting that "an ATM * * * must be regularly serviced by employees or agents").

2.    *Any Place Of Business In The District Is Not Regular And Established.*

Furthermore, the district court wrongly concluded that GGC servers meet the requirement of a "regular and established" place of business. 28 U.S.C. § 1400(b). As this Court explained in *Cray,* the place in question must be "'settle[d] certainly, or fix[ed] permanently.'" *Cray*, 871 F.3d at 1363 (quoting Black's Law Dictionary (1st ed. 1891)). Here, the ISPs host the servers in question pursuant to a contract that permits the ISPs to move the servers to different locations without terminating the agreement. Beyond that, the contract also can be terminated "at any time" for the "convenience" of either party. The storage of personal property on the shelf of a third party pursuant to an agreement that can be terminated at any time for any reason is simply not enough to establish that Google's "place" in the Eastern District is "fix[ed] permanently." *Cray*, 871 F.3d at 1363; *see also Delta T, LLC* v. *Dan's Fan City, Inc.*, No. 8:18-cv-03858-PWG, 2019 WL 3220287, at *4 (D. Md. July 17, 2019) ("The terms of the oral agreement do not demonstrate that [defendant] exercises control over DFC Rockville because either party may

19

terminate the relationship upon notice to the other party, and because [defendant] does not require DFC Rockville to use its name or logo."). And the very use of the phrase "regular and established" reinforces that the focus of the venue provision is *real*, as opposed to personal, property. A building can be regular and established; it verges on gibberish to apply that phrase to, say, a car or a computer. *See CUPP*, 2019 WL 1070869, at *3.

3.     *Any Place Of Business In The Eastern District Is Not Google's.*

Finally, the putative "place of business" is not "of the defendant" because it is not Google's. *Cray*, 871 F.3d at 1360. The "*defendant* must establish or ratify the place of business" in question. *Id*. at 1363 (emphasis added). "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id*. Here, while Google retains ownership of the computers in question, it is the ISPs that install, store, and maintain them. Appx42. Indeed, generally no Google employee even sees the GGC servers; they are shipped by a third-party straight to the ISP, who sets them up, figures out where they will be placed, and then supplies "power, network interfaces, and IP addresses." Appx42-43. Thus, notwithstanding Google's technical ownership of the computers, the ISP "exercises" the more significant "attributes of possession or control" over them. *Cray*, 871 F.3d at 1363; *see*

*CUPP*, 2019 WL 1070869 at \*2-3 (finding venue improper despite the fact that the defendant owned servers housed by a third party).

Nor does Google own or lease the "rack space" within facilities of the ISPs where the servers are stored, any more than someone who loans a book to a friend has "leased" the space on the friend's bookshelf on which the book sits. The relevant agreements say only that an ISP will "provide" "rack space" for the equipment. Appx43. That rack space, in turn, is expressly located "'in *the Host*'s' facilities"—physical property locations owned or rented by the ISP. *Id.* (emphasis added). For an ISP merely to provide rack space for equipment—at a place of the ISP's choosing—does not in any meaningful sense give Google a "lease" or control over the space on which the servers sit. Google does not even have physical access to the rooms holding the servers and their racks. The racks are in the host's facilities, and Google does not have a key. *Id.* The contract only grants Google access *if* the agreement is terminated and *if* the ISP refuses to surrender the equipment back to Google. Then, and only then, may Google "enter any premises of Host where such equipment is located during normal working hours" in order to get it back. *Id.* That is a far cry from a "lease," and certainly does not convert the *ISP*'s place of business to *Google*'s for venue purposes.

This Court has also noted that "[p]otentially relevant inquiries" in determining whether a location is a "place of business" of the defendant "include

whether the defendant lists the alleged place of business on a website, or in a

telephone or other directory; or places its name on a sign associated with or on the

building itself." *Cray*, 871 F.3d at 1363-64. Google has done none of that. There

is no Google "sign" or other indication on any of the buildings that contained the

GGC servers at issue that the building is or was a place of business of Google.

While Google has a map on a website that indicates—on a metro- and not address-

specific level—where GGC servers are deployed around the world, that map charts

the approximate location of many pieces of the worldwide infrastructure that

delivers content to Google users. It does *not* show that Google is representing it

has a "place of business" everywhere its equipment is located. *See id.* at 1363

(stating that the relevant question is whether the defendant has "represent[ed] that

it has *a place of business* in the district," not just equipment (emphasis added)).

Most of the "dots" on the map are merely based on the airport nearest to the

location of the ISP hosting the servers.

"A further consideration" in assessing whether something qualifies as a

"place of business" of a defendant "might be the nature and activity of the alleged

place of business * * * *in comparison with* that of other places of business of the

defendant in other venues." *Id.* at 1364. The GGC servers in the Eastern District

of Texas were a tiny fraction of the GGC server network. They are not necessary

for serving content. Appx42. And Google does not have a regular office or even a

data center in the District. *See* Appx44-45. In comparison with Google's offices and activities in other locations, then, any Google activity in the Eastern District of Texas is negligible. In fact, as of the end of November 2018, all of the GGC servers that were formerly in the District are no longer in service. That militates against a finding that Google somehow maintains a "place of business" there.

<center>*    *    *</center>

The district court's impulse to update the venue statute for the digital age is understandable. The "world has changed" in the century-plus since Congress enacted the current patent venue law, particularly with the advent of computing. *Cray*, 871 F.3d at 1359. "But, notwithstanding these changes, in the wake of the Supreme Court's holding in *TC Heartland*, * * * [courts] must focus on the full and unchanged language of the statute * * *." *Id*. And that language is "specific and unambiguous," and should not, "in the interest of some overriding policy, * * * be given a liberal construction." *Schnell* v. *Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (internal quotation marks omitted). The district court did not heed that instruction.

## II.    THE OTHER MANDAMUS FACTORS ARE SATISFIED.

1. A mandamus petitioner generally must also demonstrate that it has "no other adequate means to attain the relief" desired. *Cheney*, 542 U.S. at 380-381 (internal quotation marks omitted). Google satisfies that factor because the relief it

<center>23</center>

seeks—being spared the burden of having to litigate dozens of cases in an

inconvenient forum that is improper under federal law—cannot be secured on

appeal.  "[T]he harm * * * will already have been done by the time the case is tried

and appealed, and the prejudice suffered cannot be put back in the bottle."  *In re*

*Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc).  As this

Court put it in a related context, "an appeal" after "final judgment * * * would be

effectively pointless."  *Bd. of Regents of the Univ. of Texas Sys.* v. *Bos. Sci. Corp.*,

No. 2018-1700, 2019 WL 4196997, at *4-5 (Fed. Cir. 2019) (allowing immediate

appeal of transfer order by sovereign entity under collateral order doctrine).

Google is facing dozens of suits in the Eastern District of Texas premised on a

flawed theory of venue, and absent mandamus relief its only recourse would be to

litigate those cases fully through appeal.  This is not an adequate means of relief

from the district court's clear legal errors.

To be sure, the burden of litigating a case through trial will not suffice to

entitle a petitioner to mandamus relief in every case.  But this Court has made

abundantly clear that mandamus may be warranted where "the district court

misunderstood the scope and effect" of this Court's precedents on venue, and

intervention is necessary to provide prompt guidance to lower courts overseeing

patent cases.  *Cray*, 871 F.3d at 1359; *see In re HTC Corp.*, 889 F.3d 1349, 1354

(Fed. Cir. 2018) (recognizing that "there may be circumstances in which" anything

other than mandamus review "is inadequate"). This proposition is not controversial: It has become "well established that mandamus is available to contest a patently erroneous error in an order denying transfer of venue." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012). And the Court has routinely used its mandamus authority to review district court decisions denying motions to transfer on account of venue under Section 1406. *See BigCommerce*, 890 F.3d at 981; *ZTE*, 890 F.3d at 1011; *Cray*, 871 F.3d at 1357; *Micron*, 875 F.3d 1091; *see also In re Google LLC*, 2018 WL 5536478, at *2 ("We have * * * found mandamus to be available for asserted § 1400(b) violations in certain exceptional circumstances warranting immediate intervention to assure proper judicial administration."). The Court should do so again.

2. Finally, mandamus must also be "appropriate under the circumstances." *Cheney*, 542 U.S. at 381. Both this Court and the Supreme Court have held that mandamus is appropriate where a petition presents a "basic, undecided question" of law on a "substantial" issue, *Schlagenhauf*, 379 U.S. at 110, and where "deciding th[e] matter now * * * [is] important to 'proper judicial administration.'" *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) (quoting *LaBuy* v. *Howes Leather Co.*, 352 U.S. 249, 259-260 (1957)); *see In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016) ("Mandamus may thus be appropriate in certain cases to further supervisory or instructional goals where

25

issues are unsettled and important." (internal quotation marks omitted)).  As noted, this is such a case: The questions decided by the district court are vitally important, recurring, and continue to split the lower courts, even courts within a single district.  Resolving these threshold questions now is "important to 'proper judicial administration'" because it will ensure that patent suits are tried in appropriate forums, that district court judges do not overstep proper lines of authority, and that the growing divide among district courts does not create further forum shopping and waste.  *See BP Lubricants USA*, 637 F.3d at 1313 (citation omitted); *see* Etsy, HP, Netflix, Ringcentral, Red Hat, Salesforce, SAP America, Twitter, and the High Tech Inventors Alliance Amici Br., *In re Google*, No. 18-152 (Fed. Cir. Aug. 29, 2018), ECF No. 19; Intel Amicus Br., *In re Google*, No. 18-152 (Fed. Cir. Sept. 11, 2018), ECF No. 34.

The questions addressed by the district court's ruling have become increasingly important after *TC Heartland*.  In that case, the Supreme Court held that the phrase "judicial district where the defendant resides" in the patent venue statute means only the defendant's State of incorporation.  137 S. Ct. at 1516-17.  The *TC Heartland* decision is a powerful reminder that courts "must focus on the full and unchanged language of the statute" because "patent venue is narrower than general venue—and intentionally so."  *Cray*, 871 F.3d at 1359; *Peerless Network*, 2018 WL 1478047, at *2.  Accordingly, courts should police venue to ensure that

26

patent suits are heard only in the fora Congress intended.  This Court has repeatedly done just that, and it would be appropriate to do so here again.  *See Micron*, 875 F.3d 1091.

Mandamus is particularly appropriate now, as an increasing number of "different district courts have come to different conclusions about" the question presented.  *BigCommerce*, 890 F.3d at 981.  When this Court denied mandamus a year ago, it chose to let the question "percolate in the district courts so as to more clearly define the importance, scope, and nature of the issue for us to review."  *In re Google LLC*, 2018 WL 5536478, at *3.  The subsequent year of percolation has deepened the division among district courts and confirmed the importance of the question presented.

First, in *CUPP*, the Northern District of Texas squarely confronted the question "whether the presence of Symantec's servers at a data center owned by a third party constitutes a regular and established place of business."  2019 WL 1070869, at *2.  The court noted that other district courts (including the court below) had "come to conflicting conclusions" on this question.  *Id.* at *3.  And it firmly sided against the decision below.  First, it held that "servers are not a building or a part of a building"; they are, rather, "the physical electronic equipment used to operate the internet."  *Id.* (internal quotation marks omitted).  They are therefore not a "place" within the meaning of the statute.  Moreover,

"[t]he business conducted from Symantec servers involves 'electronic communications,' which the Federal Circuit specifically stated cannot constitute a place." *Id*. (quoting *Cray*, 871 F.3d at 1362). And, though Symantec might "direct traffic" through it servers, it does not "conduct[] its business" there within the meaning of the statute. *Id*.

Second, in *Rensselaer*, the Northern District of New York considered whether a "natural person" who is an agent or employee of the defendant "must conduct business at the location for it to be a 'place of business' under § 1400(b)." 2019 WL 3755446, at *11. The court noted a split among district courts on this question, and then agreed with Google's position here: "[T]he venue and service provisions must be read together given their common statutory history and structural connection." *Id*. And, so read, it is clear that "Congress assumed that a defendant with a place of business in a district will also have agents conducting such business in the district." *Id*. (internal quotation marks omitted). The recent reasoning of the courts in both *CUPP* and *Rensselaer*, then, fully supports Google's position that it should not be subject to venue solely on the basis of GGC servers. And the fact that those two cases presented the same basic legal questions as this petition, even though they arose in different factual circumstances, shows that the questions are the sort of "broad and fundamental legal questions" that

should be resolved through mandamus.  *In re Google LLC*, 2018 WL 5536478, at *2.

And these new decisions only add to the confusion already reigning. Another Court in the Eastern District of Texas had already specifically found that Google's GGC servers were *not* a "regular and established place of business" for venue purposes.  *Personal Audio*, 280 F. Supp. 3d at 933-935.[4]  Other courts too have weighed in on whether telecommunications equipment or storage units more generally can qualify, and have reached holdings at odds with the court's decision below.  *See Peerless Network*, 2018 WL 1478047, at *3-5 ("a shelf containing a piece of [the defendant's] telecommunications equipment" in the district was not a regular and established place of business); *CDx Diagnostic*, 2018 WL 2388534, at *3 (storage units in the district were not sufficient); Memorandum Opinion & Order at 4, *BMC Software, Inc.* v. *Cherwell Software, LLC*, No. 1:17-cv-01074-LO-TCB (E.D. Va. Dec. 21, 2017), ECF No. 55 (rental of a computer server in the district was not a regular and established place of business).  And some of those decisions specifically found that, in order to qualify as a "place of business" for purposes of the venue statute, there must be employees or other agents of the defendant present at the putative "place" conducting the defendant's business.

---

[4] Given the volume of patent litigation in that District, and the high percentage of cases assigned to the lower court in this case, the intra-district conflict is reason enough for this Court "to adopt a uniform national rule" on "patent-specific venue."  *ZTE*, 890 F.3d at 1013.

*Peerless Network*, 2018 WL 1478047, at *3-5; *CDx Diagnostic*, 2018 WL 2388534, at *3.

The district court below also suggested that its decision turned on "the *specific nature of Google's business* and the *particular facts of this case*," implying that this case presents primarily factual rather than legal questions. Appx3; *see also In re Google LLC*, 2018 WL 5536478, at *2 ("The district court's venue ruling rests on a variety of facts * * *."). But the district court's opinion refutes itself on that point: It explicitly "disagrees with the *legal analysis* in *CUPP*," which involved a company other than Google. Appx2 n.2 (emphasis added). The court would have nothing to "disagree with" if its opinion were simply an application of *Cray* to highly specific facts that were unique to Google. *Id.* And this mandamus petition seeks review of the district court's "legal analysis." *Id.* The core contention concerns the meaning of the venue statute: Specifically, the venue statute requires that a "place of business" be real property staffed by employees or other agents of the defendant. If Google is right about what the statute means, then the district court's opinion is wrong. And the "interpretation of a statute * * * is a question of law." *Lane* v. *Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). In sum, this petition presents an important and recurring question of law, not a fact-bound question about the application of *Cray*.

Further, after noting that other courts had disagreed with its conclusion, the district court consciously adhered to it despite the criticism.  Appx2 & n.2.  Thus, the present division in authority on the meaning of the venue statute will not resolve itself without this Court's intervention.  And the district court's decision in *SEVEN* has already engendered significant forum shopping, waste, and unnecessary litigation.  As noted above, Google alone was sued dozens of times in the Eastern District of Texas in the wake of *SEVEN*.  Most of those cases came after this Court's denial of mandamus in favor of more percolation, and rely on the same flawed theory of venue as *SEVEN*.  Google and other similarly situated defendants will be (and have been) forced to preserve and brief their venue objections in all of those cases, and then go through extensive discovery, *Markman* hearings, summary judgment briefing, and trial, all before courts that have no authority to hear the cases.  A core function of mandamus is to ensure the lower courts remain "confine[d]" to the "lawful exercise of [their] prescribed" authority, and thus to prevent this kind of waste.  *Schlagenhauf*, 379 U.S. at 109-110 (internal quotation marks omitted).

In short, the decision below—if left to stand—will compound (and has already compounded) the considerable confusion in the lower courts.  It will reinforce a dramatic expansion of the patent venue statute, and subject numerous companies to suit or the threat of suit where they have no proper place of business.

31

The end result will be the kind of permissive venue regime that the Supreme Court, in *TC Heartland*, sought to rein in.  If ever this Court's "supervisory [and] instructional" function were essential, it is now.  *BigCommerce*, 890 F.3d at 981 (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court issue a writ of mandamus directing the Eastern District of Texas to dismiss this case for lack of proper venue.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>/s/ Neal Kumar Katyal</td></tr>
<tr><td>September 17, 2019</td><td>Neal Kumar Katyal<br>Keith O'Doherty<br>HOGAN LOVELLS US LLP<br>555 Thirteenth St., N.W.<br>Washington, D.C. 20004<br>Tel.: (202) 637-5547<br>Fax: (202) 637-5910</td></tr>
<tr><td></td><td>Thomas P. Schmidt<br>HOGAN LOVELLS US LLP<br>390 Madison Avenue<br>New York, NY 10017<br>Tel.: (212) 918-5547<br>Fax: (212) 918-3100</td></tr>
<tr><td></td><td>*Counsel for Petitioner Google LLC*</td></tr>
</table>

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitations of Federal

Rules of Appellate Procedure 21(d)(1) because it contains 7,785 words.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface using Microsoft Office Word in Times New Roman 14-point font.


/s/ Neal Kumar Katyal

# CERTIFICATE OF SERVICE

I certify that on September 17, 2019, I served a copy of the foregoing document on the following counsel of record and district court judge by Federal Express and electronic mail at the following addresses:

Jeffrey R. Bragalone
T. William Kennedy Jr.
Jerry Tice, II
BRAGALONE CONROY P.C.
2200 Ross Ave.
Suite 4500W
Dallas, Texas 75201
Tel.: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
bkennedy@bcpc-law.com
jtice@bcpc-law.com

Wesley Hill
Andrea Leigh Fair
WARD, SMITH & HILL, PLLC
P.O. Box 1231
Longview, Texas 75606
Tel.: (903) 757-6400
Fax: (903) 757-2323
wh@wsfirm.com
andrea@wsfirm.com

*Counsel for Plaintiff-Respondent*
*Super Interconnect Technologies LLC*

J. Mark Mann
G. Blake Thompson
MANN TINDEL & THOMPSON
300 W. Main
Henderson, TX 75652
Tel.: (903) 657-8540
Fax: (903) 657-6003
mark@themannfirm.com
blake@themannfirm.com

Kent E. Baldauf, Jr.
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center, Ste. 1200
420 Ft. Duquesne Boulevard
Pittsburgh, PA 15222
Tel.: (412) 471-8815
Fax: (412) 471-4094
kbaldaufjr@webblaw.com
bclark@webblaw.com

Steven M. Geiszler
FUTUREWEI TECHNOLOGIES, INC.
5340 Legacy Drive, Suite 175
Plano, TX 75024
Tel.: (469) 277-5763
steven.geiszler@futurewei.com

*Counsel for Defendants*
*Huawei Device Co. Ltd., Huawei Device USA, Inc.,*
*Huawei Device (Shenzhen) Co., Ltd. and Huawei Device*
*(Dongguan) Co., Ltd. in Consolidated Action 2:18-cv-00462*

Hon. Rodney Gilstrap
U.S. District Court – Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Tel.: (903) 935-3868
Fax: (903) 935-2295


/s/ Neal Kumar Katyal