No. 19-126

In The

# United States Court of Appeals
# for the Federal Circuit

IN RE GOOGLE LLC,

Petitioner,

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Nos. 2:18-cv-00462, -00463 (consolidated)
Chief Judge Rodney Gilstrap

## REPLY BRIEF IN SUPPORT OF MANDAMUS

Thomas P. Schmidt
HOGAN LOVELLS US LLP
390 Madison Ave.
New York, NY 10017
Tel.: (212) 918-5547
Fax: (212) 918-3100

Neal Kumar Katyal
Keith O'Doherty
HOGAN LOVELLS US LLP
555 Thirteenth St., N.W.
Washington, D.C. 20004
Tel.: (202) 637-5528
Fax: (202) 637-5190
neal.katyal@hoganlovells.com

October 7, 2019

*Counsel for Petitioner*
*Google LLC*

# CERTIFICATE OF INTEREST

Counsel for Petitioner Google LLC hereby certifies as follows:

1.  The full name of every party represented by me is: **Google LLC.**

2.  The real parties in interest are: **Google LLC.**

3.  All parent corporations and any publicly held companies that own 10% or more of the stock of the parties I represent are as follows:

**Google LLC** is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company.  No publicly held company owns 10% or more of Alphabet Inc.'s stock.

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or that are expected to appear in this court are:

**Hogan Lovells US LLP:** Neal Kumar Katyal, Thomas P. Schmidt, and Keith O'Doherty.

**O'Melveny & Myers LLP:** Darin W. Snyder, Luann L. Simmons, David S. Almeling, Mark Liang, Boris Mindzak, and Eric Su.

**Mann Tindel Thompson:** J. Mark Mann and G. Blake Thompson.

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: **None.**

Dated: October 7, 2019             /s/ Neal Kumar Katyal
                                   Neal Kumar Katyal

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................................i

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ...............................................................................................1

   I.     THIS COURT SHOULD EXERCISE ITS DISCRETION
          TO ISSUE A WRIT OF MANDAMUS .....................................................2

   II.    THE RIGHT TO MANDAMUS IS CLEAR AND
         INDISPUTABLE ...................................................................................9

        A.     SIT Has Not Identified A Place Of Business Of
             Google ......................................................................................9

        B.     The GGC Servers Are Not Regular And Established
             Places Of Business .......................................................13

CONCLUSION ................................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*BMC Software, Inc.* v. *Cherwell Software, LLC*,
   No. 1:17-cv-01074-LO-TCB (E.D. Va. Dec. 21, 2017)...................................3, 4

*Cheney* v. *U.S. Dist. Court for D.C.*,
   542 U.S. 367 (2004).....................................................................................2, 3

*CUPP Cybersecurity LLC.* v. *Symantec Corp.*,
   No. 3:18-cv-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16,
   2019) ....................................................................................................3, 4, 7, 8

*Cyan, Inc.* v. *Beaver Cty. Emps. Ret. Fund*,
   138 S. Ct. 1061 (2018).......................................................................................14

*Erlenbaugh* v. *United States*,
   409 U.S. 239 (1972)...........................................................................................15

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018) .....................................................................2, 3, 4

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ...............................................................*passim*

*In re Cutsforth, Inc.*,
   No. 2017-135, 2017 WL 5907556 (Fed. Cir. Nov. 15, 2017) .............................2

*In re Google LLC*,
   914 F.3d 1377 (Fed. Cir. 2019) .....................................................................1, 3

*In re HTC Corp.*,
   889 F.3d 1349 (Fed. Cir. 2018) ..........................................................................4

*In re Micron Tech., Inc.*,
   875 F.3d 1091 (Fed. Cir. 2017) .....................................................................2, 3

*In re Queen's Univ. at Kingston*,
   820 F.3d 1287 (Fed. Cir. 2016) ..........................................................................3

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*In re Stoltz*,
   315 F.3d 80 (2d Cir. 2002) ................................................................11

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ....................................................2, 4

*Mackey* v. *Lanier Collection Agency & Serv., Inc.*,
   486 U.S. 825 (1988).......................................................................14

*Marx* v. *Gen. Revenue Corp.*,
   568 U.S. 371 (2013).......................................................................14

*Nat'l Ass'n of Home Builders* v. *Defs. of Wildlife*,
   551 U.S. 644 (2007)..................................................................13, 14

*Peerless Network, Inc.* v. *Blitz Telecom Consulting, LLC*,
   No. 17-CV-1725 (JPO), 2018 WL 1478047
   (S.D.N.Y. Mar. 26, 2018) ........................................................3, 10, 15

*Personal Audio, LLC* v. *Google, Inc.*,
   280 F. Supp. 3d 922 (E.D. Tex. 2017)...........................................3, 8

*Pueblo of Santa Ana* v. *United States*,
   214 F.3d 1338 (Fed. Cir. 2000) .......................................................7

*Rensselaer Polytechnic Inst.* v. *Amazon, Inc.*,
   No. 1:18-cv-00549 (BKS/CFH), 2019 WL 3755446 (N.D.N.Y.
   2019) ...................................................................................*passim*

*SEVEN Networks, LLC* v. *Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018)..........................................*passim*

**STATUTES:**

28 U.S.C. § 1406.................................................................................4

28 U.S.C. § 1694...............................................................................14

America Invents Act .....................................................................13, 14

# TABLE OF AUTHORITIES—Continued

**Page(s)**

29 Stat. 695-696 (1897) ........................................................................14

**RULE:**

Practice Note to Fed. Cir. Rule 47.5 ..........................................................7

**OTHER AUTHORITIES:**

Black's Law Dictionary (1st ed. 1891) ......................................................16

Black's Law Dictionary (10th ed. 2014) ...................................................10

General Order No. 19-13 (E.D. Tex.), *available at*
    http://www.txed.uscourts.gov/sites/default/files/goFiles/GO-19-
    13.pdf ..................................................................................................6

# **INTRODUCTION**

In response to a mandamus petition filed over a year ago, presenting the same question as this petition, a Judge of this Court observed:  "The question is not if we will take this issue up, but when, and how many judicial and party resources will have been needlessly wasted by the time we do."  *In re Google LLC*, 914 F.3d 1377, 1382 (Fed. Cir. 2019) (Reyna, J., dissenting from denial of rehearing).  The events of the last year have shown the urgent need for this Court's guidance:  A large number of lawsuits, against a variety of defendants, have been filed in a single division of a single District Court, in order to take advantage of a plainly wrong interpretation of the patent venue statute.  Meanwhile, additional district court decisions, in other jurisdictions, have ventilated the legal issues and drawn into stark relief the flaws in the analysis below.  Waiting for pending cases to proceed to judgment would serve no purpose and result in a staggering waste of judicial and litigant resources:  Many cases will have to go back to square one in a new venue after appeal.  The delay will have real-world consequences for the non-litigating public, too, as businesses structure their activities to avoid the consequences of the District Court's approach.

In short, this Court faces an extraordinary confluence of circumstances:  a provision of law that has suddenly become crucial to patent litigation after decades of dormancy, and has generated massive uncertainty; an aberrant District Court

decision that now governs an outsized percentage of the Nation's patent docket;
and a large number of cases now proceeding in the wrong forum in reliance on that
decision.  This unique situation calls for immediate intervention.  And that is not
just Google's view:  A large coalition of some of the "world's leading businesses"
agree that the District Court's approach is "inconsistent with the text of the patent
venue statute" and "will create enormous inefficiencies."  Acushnet,
BigCommerce, ChargePoint, Checkpoint Software Technologies, DISH Network,
eBay, Fitbit, Garmin, High Tech Inventor's Alliance, HP, L Brands, Merit Medical
Systems, Netflix, Quantum Corporation, RingCentral, Twitter, Walmart, and
Williams-Sonoma Amici Br. 1-2.

The Court should grant the petition.

## I.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO ISSUE A WRIT OF MANDAMUS.

"[T]he issuance of [a] writ" of mandamus "is a matter vested in the
discretion of the court to which the petition is made."  *Cheney* v. *U.S. Dist. Court
for D.C.*, 542 U.S. 367, 391 (2004).  Repeatedly, this Court has exercised that
discretion to correct district courts' misinterpretations of the patent venue statute.
*In re BigCommerce, Inc.*, 890 F.3d 978 (Fed. Cir. 2018); *In re ZTE (USA) Inc.*, 890
F.3d 1008 (Fed. Cir. 2018); *In re Micron Tech., Inc.*, 875 F.3d 1091 (Fed. Cir.
2017); *In re Cutsforth, Inc.*, No. 2017-135, 2017 WL 5907556 (Fed. Cir. Nov. 15,
2017); *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).  Mandamus is warranted

2

for two reasons.  First, a core function of mandamus is "to confine [the district court] to a lawful exercise of its prescribed jurisdiction."  *Micron*, 875 F.3d at 1095 (quoting *Cheney*, 542 U.S. at 380).  Second, mandamus "further[s] supervisory or instructional goals where issues are unsettled and important," *BigCommerce*, 890 F.3d at 981 (quoting *In re Queen's Univ. at Kingston*, 820 F.3d 1287 1291 (Fed. Cir. 2016)), and when "recurring legal issues" threaten "considerable litigation producing disparate results."  *Micron*, 875 F.3d at 1095.  And when both of those factors exist—that is, when an over-extension of authority is coupled with confusion in lower courts—the case for mandamus is at its pinnacle.

That is the case here.  The District Court, by misreading the venue statute, has dramatically overstepped the limits on its authority.  *See In re Google*, 914 F.3d at 1381 (Reyna, J., dissenting from denial of rehearing).  And its decision breaks from numerous others on the venue statute.  *See Rensselaer Polytechnic Inst.* v. *Amazon.com, Inc.*, No. 1:18-cv-00549 (BKS/CFH), 2019 WL 3755446 (N.D.N.Y. Aug. 7, 2019); *CUPP Cybersecurity LLC* v. *Symantec Corp.*, No. 3:18-cv-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019); *Peerless Network, Inc.* v. *Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018); *Personal Audio, LLC* v. *Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017); Memorandum Opinion & Order, *BMC Software, Inc.* v.

*Cherwell Software, LLC*, No. 1:17-cv-01074-LO-TCB (E.D. Va. Dec. 21, 2017), ECF No. 55.

Respondent Super Interconnect Technology LLC's (SIT's) counter-arguments miss the mark. First, quoting *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018), SIT argues that "avoid[ing] the inconvenience of litigation" is an insufficient reason to grant mandamus, Opp. 10-11. But Google's position is not that *every* venue error should be immediately reviewable. Rather, it is that the unusual circumstances here justify review: The petition presents a cross-cutting legal issue of national importance that has divided lower courts, and—as the chorus of amici reveals—threatens a tremendous waste of resources beyond the present case, as Judge Reyna forewarned. *See generally* Amici Br. 4-5. *HTC* itself recognized that "there may be circumstances" in which this Court must correct a Section 1406 decision before trial, 889 F.3d at 1354, and this Court has since issued writs of mandamus in that very posture, *see BigCommerce*, 890 F.3d at 981; *ZTE*, 890 F.3d at 1010-11.

SIT also argues that "[n]othing has changed since the Court's prior decision" denying mandamus. Opp. 11. That is untrue. First, there have been two more decisions expressly disagreeing with the District Court's opinion in *SEVEN Networks, LLC* v. *Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018). *See Rensselaer*, 2019 WL 3755446, at *11; *CUPP*, 2019 WL 1070869, at *3. Second,

further evidence has emerged of just how profoundly the decision below has warped the patent system.  As the amici demonstrate, *SEVEN* "has resulted in numerous suits being filed in the Eastern District of Texas under 'equipment-based' theories"—including dozens more against Google itself—and, as time passes, has emboldened plaintiffs to turn to increasingly outlandish applications of the decision.  Amici Br. 12-14.

SIT downplays the many lawsuits pending against Google in the Eastern District, observing that "Google is involved in 59 active patent cases nationwide" and faulting Google for not identifying which cases in the Eastern District rely on the same theory of venue as *SEVEN*.  Opp. 11-12.  But the first number only highlights the gravity of the problem:  Across the entire Nation, over *half* of Google's patent litigation docket is proceeding in a single division of a single judicial district (where Google has no offices).  SAppx43-45.  And while the District Court has not yet ruled on Google's venue-based motions to dismiss in all the cases pending before it, nearly all of the plaintiffs in those cases rely on *SEVEN*'s critical error to some extent.  *E.g.*, Complaint, *Uniloc 2017 LLC* v. *Google LLC*, No. 2:18-cv-00499-JRG (E.D. Tex. Nov. 17, 2018), ECF No. 1. Further, as amici show, other lawsuits against other defendants rely on similar theories.  *See* Complaint, *Personalized Media Commc'ns, LLC* v. *Netflix, Inc*, No. 2:19-cv-00091-JRG (E.D. Tex. Mar. 21, 2019), ECF No. 1; Complaint,

*Personalized Media Commc'ns, LLC* v. *Akamai Techs., Inc.*, No. 2:19-cv-00089-JRG (E.D. Tex. Mar. 21, 2019), ECF No. 1.  Making matters worse, every single patent lawsuit a plaintiff chooses to file in Marshall, Texas, is assigned to the same District Court that issued the erroneous *SEVEN* decision.  General Order No. 19-13 (E.D. Tex.).[1]  Until this Court intervenes, every plaintiff has the unilateral authority to choose whether its case will be governed by one court's expansive and erroneous venue regime.

The fact that Google has taken the Google Global Cache (GGC) servers out of service in the Eastern District does not cut against mandamus.  This Court is positioned to set a nationally applicable rule, and Google has GGC servers in other judicial districts.  Moreover, other "companies * * * have decommissioned equipment within the Eastern District of Texas in order to avoid being sued under the district court's ruling."  Amici Br. 16.  That intensifies the need for mandamus: Companies are arranging their businesses to avoid a plainly wrong interpretation of the venue statute.

Recognizing that this Court has often intervened in similar circumstances, SIT says this case is different because those prior instances involved "discrete legal issues of first impression."  Opp. 13.  But this case fits that description.  It presents at least two broadly applicable legal issues:  (1) whether equipment or personal

---

[1] *Available at* http://www.txed.uscourts.gov/sites/default/files/goFiles/GO-19-13.pdf.

property, like computer servers, can qualify as a place of business under the venue statute; and (2) whether that statute requires employees or agents of a defendant to be present at a putative place of business.[2]  Indeed, SIT concedes that *Cray* itself "address[ed] the *meaning* of 'regular and established place of business.'"  *Id.* (emphasis added).  Such issues of "statutory construction" are "a legal matter," *Pueblo of Santa Ana* v. *United States*, 214 F.3d 1338, 1340-1341 (Fed. Cir. 2000).

The District Court below said that its decision was based on "the particular facts of this case" and "the specific nature of Google's business," Appx3 (emphases omitted), and, according to SIT, that shows the case does not involve a "discrete legal issue[]," Opp. 13.  But the District Court's delving into the factual minutiae in *SEVEN* is at the heart of its legal error:  It should have recognized that computer servers in a third party's facilities plainly—and categorically—do not qualify as places of business, rendering most of the facts it cited irrelevant.  And any concern that *SEVEN*'s holding might be unique to Google was put to rest by *CUPP* and *Rensselaer*, which both disagreed with *SEVEN*'s legal analysis in the context of different businesses.  Pet. 27-28.  Further, "[a]ll" seventeen companies

---

[2] SIT suggests that Google's Statement of Related Cases constitutes a "conce[ssion]" that the legal issue here will not affect a broad class of cases.  Opp. 15.  That is meritless.  As the Practice Note to Federal Circuit Rule 47.5 explains, "[c]ases are not 'related' * * * simply because they involve the same general legal issue."  The "general legal issue" before the Court will impact a huge number of cases; Google need not disclose them one-by-one.

that signed the amicus brief—and the High Tech Inventor's Alliance—"are being

negatively affected by the district court's approach below."  Amici Br. 4.

SIT suggests that *CUPP* and *Rensselaer* are "distinguishable," but offers up

only immaterial factual distinctions.  The key is that their *legal* holdings would

rule out venue here.  *CUPP* held that a company's "servers at a data center owned

by a third party" do not "constitute[] a regular and established place of business."

2019 WL 1070869, at *2-3.  It reasoned that "servers are not a building or a part of

a building," and hence not a "place," and that the "business conducted from

[defendant's] servers involves 'electronic communications,' which the Federal

Circuit specifically stated cannot constitute a place."  *Id*. at *3.  Under that

reasoning, Google's GGC servers fail to qualify.  The District Court here

recognized as much by "disagree[ing] with the *legal* analysis in *CUPP*."  Appx2

n.2 (emphasis added).  SIT's attempt to distinguish *Rensselaer* similarly fails:  SIT

focuses on immaterial facts without grappling with the legal holding.[3]

---

[3] SIT also suggests (at 21-22) that *Personal Audio*—counterintuitively—does not
conflict with the decision below, even though it involved the same equipment
owned by the same company.  SIT's theory is that the factual record was less
developed in *Personal Audio*; however, that court recited all pertinent facts,
including how GGC servers function and Google's relationship to host ISPs.  280
F. Supp. 3d at 934-935.  Any additional facts in this record have no impact on the
common legal issue, as the District Court recognized when it expressly disagreed
with the "legal analysis" in *Personal Audio*.  Appx2 n.2.

## II.    THE RIGHT TO MANDAMUS IS CLEAR AND INDISPUTABLE.

### A.    SIT Has Not Identified A Place Of Business Of Google.

For venue to be proper in the Eastern District of Texas, SIT must identify a "physical, geographical location" that is "of the defendant." *Cray*, 871 F.3d at 1362-63 (internal quotation marks omitted).  SIT's efforts to do so hinge on conflating two separate things:  the GGC servers and the shelving units or "rack space" on which they are stored.  As SIT would have it, "the 'place' [i]s both the server *and the leased location occupied by the server*, both of which were under the exclusive control of Google."  Opp. 18-19.  But despite SIT's hand-waving, the servers are not a "place" and the space they occupy is not Google's.

1. SIT's attempt to call the servers "places" collapses quickly.  Indeed, SIT's brief is at war with itself on this point.  *Compare* Opp. 18 ("[T]he district court did not find that Google's servers in isolation were places of business."), *with id.* at 21 ("[T]he district court properly held * * * the GGC server itself * * * *independently* * * * meet[s] the statutory requirement of a physical place.") (internal quotation marks omitted).

Notably, SIT does not seriously dispute the principle that the place "must be real property or must have the attributes of real property."  Pet. 11.  As *Cray* explained, "[t]he statute requires * * * [a] building or a part of a building set apart for any purpose or quarters of any kind from which business is conducted."  871

F.3d at 1362 (internal quotation marks omitted).  SIT's challenges that proposition only obliquely through its flawed warehouse analogy.  SIT asserts that Google does not "deny that warehouses can be places of business for establishing venue," but then bizarrely construes that as a concession that real property is not required because "[a] warehouse is merely a structure—and is not necessarily real property."  Opp. 23.  That assertion—offered without citation to any authority—cannot withstand even the most cursory comparison with the definition of real property.  *See* Black's Law Dictionary (10th ed. 2014) (defining "real property" as "[l]and and anything * * * erected on it").

Next, SIT argues that the GGC servers "take up space that is a part of a building."  Opp. 19 (internal quotation marks omitted).  But merely "taking up space" *within* a building is not the same as being *part* of that building.  Accepting SIT's definition would elide any distinction between things and places; between objects and the space that they occupy.  It would mean that virtually anything—a cell phone, a laptop—would count as a "place."  Such an approach would render meaningless this Court's insistence that the statute covers only a "physical, *geographical* location."  *Cray*, 871 F.3d at 1362 (emphasis added).

2.  To supply the missing "physical, geographical location," SIT turns to the shelf space that the servers occupy.  Opp. 20.  First of all, a shelf is not real property, any more than a server.  *Peerless Network*, 2018 WL 1478047, at *4-5.

And even if it were, the shelf space here is not "of the defendant":  Google has no property interest in the shelving units or the facilities where they sit.

SIT raises no objection to the principle that Google must have some property interest in the relevant place for it to be "of the defendant."  Instead, it primarily claims that Google in fact "lease[s]" the shelf space.  Opp. 26.  Not so.  *See* Appx42-43.  Once again, SIT confuses Google's ownership interest in the GGC servers with a real property interest in the storage facilities.  As the Service Agreements themselves clarify, those facilities are "the *Host's.*"  Appx43 (emphasis added).  Crucially, SIT never contests that Google has no way to access those facilities.  *See* Pet. 21; Appx43.  And although the Agreements state that Google should be notified if an ISP proposes moving a server, they give Google no right to choose, relocate, or otherwise alter the shelving units on which the servers rest.  *See* Pet. 21; Appx43.  Even using SIT's preferred definition, such a restrictive agreement does not approach a "lease."  *See* Opp. 26-27 (defining a "lease" to include "the right to *use and occupy*" the property in question (emphasis added) (quoting *In re Stoltz*, 315 F.3d 80, 89-90 (2d Cir. 2002)).  Nor does it make any difference, as SIT suggests, that both Google and its ISP hosts "benefit under the" Service Agreements.  *Id.* at 26.  That is a common feature of *all* contracts; it does not make these contracts real property "leases."

Lacking any actual property interest to point to, SIT falls back on Google's website. That website, SIT claims, "tells the public that * * * GGC servers are places 'of Google.'" *Id.* at 29. In fact, Google's website at most represented that Google had *equipment* located in the Eastern District—not a physical structure or any part of one. And, indeed, Google has not "place[d] its name on a sign associated with" any "building" in the Eastern District. *Cray*, 871 F.3d at 1363-64. There is no visible connection to Google on any ISP facilities, Opp. 19, and the ISP is contractually prohibited from advertising its association with Google.

3. SIT's last-ditch metaphysical argument—that the servers can somehow be combined with the physical space that they occupy—cannot salvage its venue choice. *See Id.* at 21 (positing that the server and the facility "*together*" could "meet the statutory requirement of a 'physical place'" (quoting *SEVEN*, 315 F. Supp. 3d at 954 (emphasis added by SIT)). This mix-and-match theory, which neither SIT nor the District Court has articulated in any detail, is incompatible with the statutory text, which requires a singular "place" that is "of the defendant." *Cray*, 871 F.3d at 1362-63. In other words, "[a]ll of these requirements must be present" at once. *Id.* at 1362. It is not enough to combine one thing that satisfies the "place" requirement with something different that satisfies the "of the defendant" requirement. What the statute demands, as *Cray* recognized, is at least

one "physical, geographical location" that simultaneously fulfills the other two requirements. *Id.* Neither the servers nor the rack space checks both boxes.

## B. The GGC Servers Are Not Regular And Established Places Of Business.

The absence of a physical place of Google's is enough to render Google's right to mandamus "clear and indisputable," but it is far from the only deficiency in SIT's venue theory. Equally fatal is SIT's inability to establish that the GGC servers are "places *of business*," much less "regular and established" ones.

1. As Google explained in its petition, a core attribute of a company's "place of business" is that a company's employees or agents are there to conduct that business. Pet 11-14. That conclusion flows from the statutory text, context, this Court's precedent, and common sense. *Id.* And no Google employee or agent has ever serviced or even seen the GGC servers formerly housed in the Eastern District of Texas. Appx43.

SIT's contrary arguments fail. First, SIT insists that a section of the America Invents Act (AIA) (enacted in 2011) should color this Court's reading of the patent venue provision enacted over a hundred years prior. Specifically, SIT says, by excepting ATMs from the definition of "place of business," Congress implicitly *added* to that definition any supposedly "similar" equipment within the term's meaning. Opp. 32. But Congress does not amend statutes by implication in this way. *See Nat'l Ass'n of Home Builders* v. *Defs. of Wildlife*, 551 U.S. 644, 664

n.8 (2007) (Supreme Court has "repeatedly recognized that implied amendments are no more favored than implied repeals"). The more plausible interpretation of the AIA is that it merely "clarif[ied] the original meaning" of the venue statute. *Mackey* v. *Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 839 (1988). There are "many examples of Congress legislating in that hyper-vigilant way, to 'remov[e] any doubt' as to things not particularly doubtful in the first instance." *Cyan, Inc.* v. *Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1074 (2018) (quoting *Marx* v. *Gen. Revenue Corp.*, 568 U.S. 371, 383-384 (2013)).

Next, SIT takes aim at Google's reference to the patent service provision, which—in contrast to the AIA—was enacted by the same Congress *on the same day* as the venue provision. *See* 29 Stat. 695-696 (1897). As Google explained in its petition, by specifying that process may be served at "a regular and established place of business" on an "agent or agents conducting such business," 28 U.S.C. § 1694, this contemporaneous provision demonstrates that Congress presumed that the defendant would have an agent present to receive service. Pet. 12-13; *accord Rensselaer*, 2018 WL 3755446, at *12 ("Congress contemplated that a defendant would have agents in the district conducting the defendant's business"). Given this expectation by the enacting Congress, a facility—like the one where the GGC servers were housed—entirely devoid of a company's agents or employees cannot

qualify as a "place of business." *See also Peerless*, 2018 WL 1478047, at *4 (reaching the same conclusion).

As SIT would have it, Congress's permissive phrasing of the provision, which allows for service through other methods, diminishes the relevance of the patent service provision. Opp. 33-34. But whether Congress allowed for other means for service—means not involving a "place of business"—is beside the point. What matters is what the enacting Congress thought the phrase "place of business" meant. And where two provisions "were enacted by the same legislative body at the same time," courts quite sensibly presume that Congress "uses a particular [phrase] with a consistent meaning" in those two provisions. *Erlenbaugh* v. *United States*, 409 U.S. 239, 243-244 (1972); *see also Rensselaer*, 2018 WL 3755446, at *11 ("The Court agrees with Defendant that the [patent] venue and service provisions must be read together given their common statutory history and structural connection."). These provisions are perfect candidates for that treatment.

2. In *Cray*, this Court identified another factor that affects the "place of business" analysis: "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." 871 F.3d at 1364. As the petition explains, that factor weighs strongly in Google's favor. The activities that Google allegedly conducts through its GGC servers—which "are not necessary for the delivery of Google

content"—are minimal when compared with what occurs in other parts of its network infrastructure. Appx42. Strangely, however, SIT faults Google for discussing this issue in its petition at all. Opp. 34-35. As this Court has squarely endorsed such a line of argument—observing that the "comparison might reveal that the alleged place of business is not really a place of business at all," *Cray*, 871 F.3d at 1364—there is no basis for SIT's objection.

3. Finally, SIT has failed to demonstrate that the GGC servers amount to a "regular and established" part of Google's infrastructure. Plainly they are not a "place of business" to be "settle[d] certainly, or fix[ed] permanently," as *Cray* requires. *Id.* at 1363 (quoting Black's Law Dictionary (1st ed. 1891)). Indeed, SIT apparently concedes, Opp. 24, that the Service Agreement allows both Google and the host ISP to terminate at any time simply for "convenience," Appx43. Sidestepping this fact, SIT conjures a hypothetical divorced from this case: a 20-year lease (presumably of real property) with "a termination clause." Opp. 25. That example only reinforces Google's point: Compared to such real estate, portable movable property that functions in any number of locations is highly "transient." *Cray*, 871 F.3d at 1363. And it cannot be a place of business.

## **CONCLUSION**

For the foregoing reasons, and those in the petition, Google respectfully

requests that this Court issue a writ of mandamus.

Respectfully submitted,

/s/ Neal Kumar Katyal

October 7, 2019

Neal Kumar Katyal
Keith O'Doherty
HOGAN LOVELLS US LLP
555 Thirteenth St., N.W.
Washington, D.C. 20004
Tel.: (202) 637-5528
Fax: (202) 637-5910

Thomas P. Schmidt
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel.: (212) 918-5547
Fax: (212) 918-3100

*Counsel for Petitioner Google LLC*

17

## CERTIFICATE OF COMPLIANCE

1.      This reply complies with the type-volume limitations of Federal

Circuit Rule 21(c) because it contains 3,895 words.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface using Microsoft Office Word in Times New Roman 14-point font.


/s/ Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I certify that on October 7, 2019, I caused a copy of the foregoing document to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Neal Kumar Katyal